IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 24-03 (MN) |
| | ) | |
| BERNARDO MCKINNEY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

At Wilmington, this 6th day of October 2025:

On May 21, 2025, Defendant Bernardo McKinney ("Defendant") filed a Motion to Suppress Evidence ("Motion"). (D.I. 37). Briefing is complete. (D.I. 38, 43). The Court has carefully reviewed the filings, and the arguments presented therein. For the reasons set forth in this Order, the Court will DENY Defendant's Motion.

## I.    BACKGROUND

On November 9, 2023, law enforcement executed two search warrants in Millsboro, Delaware: one at 19118 Saunders Road ("Saunders Road"), and a second at Sentinel Self Storage Unit #D10, 28462 John J. Williams Highway ("Sentinel"). (D.I. 37-1 at 14; D.I. 37-2 at 2-3).

The Saunders Road warrant sought illegal drugs, related paraphernalia, indicia of occupancy or residency of the residence, books and paper records related to the transport, order, and sale of heroin or its by-products, papers reflecting interstate travel in furtherance of drug trafficking, records evidencing assets obtained from violations of controlled substance laws, currency in close proximity to illegal drugs or paraphernalia or in excess of $250.00, and any firearm or deadly weapon in close proximity to illegal drugs or other controlled substance.

(D.I. 37-1 at 14). As listed in the search warrant affidavit, the targets of the investigation were Carl F. Walker and Defendant Bernardo McKinney. (*Id.* at 5 ¶ 2-3).

The Sentinel warrant was substantially the same, with the exception that the only target listed was Defendant, on the basis that he owned, maintained, controlled, leased, or occupied the unit. (D.I. 37-2 at 4, 14).

During the search of the Saunders Road property, law enforcement located a safe containing numerous suspected illegal drugs, U.S. currency, two pistols (one without a serial number, the other with serial #AE84957), a silencer, ammunition, a money counter, and three digital scales in a trailer on the property. (*See* D.I. 38-1). In the Sentinel unit, law enforcement located suspected fentanyl, quinine, suspected xylazine, two AR platform firearms without serial numbers, two silencers, a handgun (serial #LR432245) and a tactical vest. (*See* D.I. 38-2).

Defendant now contends that those searches and seizures occurred "without supplying the judge who issued the warrant with sufficient facts to establish probable cause" and that "[l]aw enforcement's affidavits were [] filled with unsupported conclusory assertions, misleading factual claims and deliberately or recklessly false statements." (D.I. 37 at 1). As a result, Defendant seeks to suppress "all evidence obtained from the search of the Sentinel Self-Storage Unit D10 . . . as well as from the search of 19118 Saunders Road." (*Id.* at 1-2).

## II.    <u>LEGAL STANDARD</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Generally, for a search or seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based upon probable cause." *United States v. Bey*, 911 F.3d 139, 144-45 (3d Cir. 2018); *see also United States v. Amos*, 88 F.4th 446, 451 (3d Cir. 2023). The judge tasked with determining whether probable cause exists to issue a warrant must "make a practical

commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Put another way, there must be a "nexus" between the place to be searched and the alleged crimes. *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). A reviewing court pays great deference to the issuing judge's determination. *Gates*, 462 U.S. at 236. "The role of a reviewing court is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'" *Stearn*, 597 F.3d at 554 (quoting *Gates*, 462 U.S. at 238). "If a substantial basis exists to support the magistrate's probable cause finding, [the Court] must uphold that finding even if a 'different magistrate judge might have found the affidavit insufficient to support a warrant.'" *Id.* (quoting *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993)). "The resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

To deter Fourth Amendment violations, "ill-gotten evidence" may be suppressed pursuant to the judicially-created doctrine known as the exclusionary rule. *United States v. Katzin*, 769 F.3d 163, 169 (3d Cir. 2014). The exclusionary rule is "designed to deter police conduct that violates the constitutional rights of citizens." *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002). A warrant lacking probable cause is not, however, automatically subject to the "extreme sanction of exclusion." *United States v. Leon*, 468 U.S. 897, 926 (1984). Rather, "[t]he good faith exception instructs that suppression of evidence 'is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority' even though no probable cause to search exists." *Zimmerman*, 277 F.3d at 436 (quoting *United States v. Hodge*, 246 F.3d 301, 307

(3d Cir. 2001)); *see also United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). In determining the applicability of the good faith exception, the Court's "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23; *see also United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999).

## III.   **DISCUSSION**

Defendant asserts that the search warrants in this case were issued without a substantial basis for finding probable cause as required by the Fourth Amendment. (*See* D.I. 37 at 3-8). The Government maintains that the searches of both the Saunders Road property and the Sentinel storage unit were authorized by valid search warrants supported by probable cause, and in the alternative, that the good faith exception applies. (D.I. 38 at 6, 9).

## A.   **The Good Faith Analysis**

As a threshold consideration, "if a motion to suppress evidence obtained pursuant to a warrant does not present a Fourth Amendment argument that should be decided in order to provide instruction to law enforcement or to magistrate judges, it is appropriate for a reviewing court to turn 'immediately to a consideration of the officers' good faith.'" *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 145 (3d Cir. 2002) (quoting *Leon*, 468 U.S. at 925). In this case, the Court does not believe that Defendant's probable cause arguments "involve . . . novel question[s] of law whose resolution is necessary to guide future action by law enforcement officers and magistrates," and therefore turns to the question of good faith. *Id.* (internal quotations and citations omitted).

"The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307-08. There are four circumstances however, in which reliance on a warrant is unreasonable and does not trigger the good faith exception. They are:

> (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Werdene*, 883 F.3d 204, 217 (3d Cir. 2018). Defendant argues that the first and third situations apply here. (D.I. 37 at 3-8; 20-21). Specifically, Defendant asserts that the "affidavit filed in support of the search warrant for 19119 Saunders Road begins with unsubstantiated claims and finishes with an unquestioned falsehood," and "the instant case provides no [] indicia of probable cause . . . [because] we have not only bare bones affidavits, there are demonstrably false statements" in them. (*Id.* at 3-4, 20-21). In relation to the second contention, Defendant argues that there was an "insufficient nexus between the alleged controlled buys, Mr. McKinney, and the storage unit . . . to justify a search of the storage unit." (*Id.* at 8-18). The Court will address each of Defendant's arguments in turn.

**B.    Deliberate or Recklessly False Affidavit**

Defendant characterizes several statements in the probable cause affidavit as "deliberately or recklessly false." (D.I. 37 at 3-8). The Third Circuit requires that a party "who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer" must satisfy the test developed by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).

5

The first step, however, is that the party must make a "substantial preliminary showing" that the affidavit contained a false statement. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (quoting *Franks*, 438 U.S. at 171). If such a showing is made, the court holds a hearing allowing a defendant to make the showing outlined in *Franks*. *Id.*

The *Franks* analysis requires that "the [party] must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Id.* (quoting *Franks*, 438 U.S. at 171-72); *Long v. Rementer*, No. 17-217 (CJB), 2018 WL 3830922, at *7 (D. Del. Aug. 3, 2018). Setting aside the question of whether Defendant appropriately requested a *Franks* hearing,[1] the Court does not find that the requisite substantial preliminary showing was made here.

First, Defendant argues that the Confidential Source's ("CS") "insistence that Mr. McKinney resided at the Saunders Road address is patently false [because] [l]aw enforcement knew Mr. McKinney's home address to be at another location based upon his vehicle registration."[2] (D.I. 37 at 4). He also contends that the three controlled buys described in the

---

[1]    Despite alleging that the Saunders Road warrant was issued in reliance on a deliberately or recklessly false affidavit, Defendant's opening brief in support of his Motion does not address *Franks* or, for that matter, request a *Franks* hearing. (D.I. 37). Instead, Defendant does so for the first time in his reply brief. (D.I. 43 at 1); *see United States v. Yung*, 37 F.4th 70, 81 (3d Cir. 2022) (concluding that appellant "forfeited" argument when he "tuck[ed] it into a single footnote, without supporting authority or analysis"). Defendant merely asserts, in a footnote, that the substantial preliminary showing "threshold is clearly met for the reasons explained below." (*Id.* at 1).

[2]    Alongside this, Defendant argues that the "inclusion of this falsehood is made all the worse considering that law enforcement knew the CS was not knowledgeable about personal information related to Mr. McKinney and Carl Walker." (D.I. 37 at 5). Defendant contends that the CS's knowledge only of Defendant's nickname, and that the CS did not know

6

affidavit "did not happen" because the affidavit's descriptions of the buys did not provide specific information on drug quantity or purchase price, there was no electronic recording of the incidents, and reports for two of the three buys did not include reports or pictures of officially authorized funds used.[3]  (*Id*. at 6-7).

As a preliminary matter, the affidavit states that the CS "has been known to law enforcement for a period of time in excess of three years" and had "provided information to law enforcement officers that has been corroborated by the arrest of numerous individuals involved in the trafficking of illegal drugs and firearms . . . [and] resulted in the seizure of illegal drugs." (D.I. 37-1 ¶ 6).  Law enforcement corroborated the CS's statements about Defendant and his whereabouts by obtaining a positive identification of Defendant and his truck, by surveilling the Saunders Road residence, and by observing Defendant meeting with third parties in the driveway. (*Id*. ¶¶ 5, 8, 10); *see United States v. Mitchell*, No. CR 08-23 (SLR), 2008 WL 2942142 (D. Del. July 30, 2008), *as modified* (Aug. 11, 2008), *as modified* (Mar. 17, 2011), *aff'd*, 350 F. App'x 763 (3d Cir. 2009).  Having a certain address listed on one's vehicle registration and residing at another is neither particularly unusual nor indicative of a "patent" falsehood.[4]  Contrary to Defendant's

---

Carl Walker's last name or how to spell Walker's first name indicates a lack of knowledge. (*Id.* at 5-6).  The Court is thoroughly unpersuaded that knowing Defendant by the nickname "Mac" when his name is McKinney, or spelling Carl as "Karl" indicates a lack of knowledge.  The CS was known to law enforcement and law enforcement corroborated information provided by the CS.

[4]    Comparison to the facts in *United States v. Saunders* proves illuminating.  No. 19-90 (HEH), 2019 WL 4040623 (E.D. Va. Aug. 27, 2019), *aff'd*, 828 F. App'x 900 (4th Cir. 2020).  In support of his request for a *Franks* hearing, the defendant argued that the probable cause affidavit incorrectly stated that he resided at a certain address when he had, in fact, been in the continuous custody of either the Richmond City jail or the Virginia Department of Corrections and that this constituted a knowing and intentional falsehood on the affiant's part.  *Id.* at *1.  The court emphasized that despite the objective falsity of that fact, "[t]he record [was] insufficient to support a finding that [the officer] intended to mislead the magistrate," a necessary element to find that the requisite preliminary showing

assertion that the "affidavit does not contain a single fact obtained during the four months of surveillance that would lead to the conclusion that Mr. McKinney resided at 19118 Saunders Road," (D.I. 37 at 5), that conclusion was supported by information from a known, reliable CS and by law enforcement surveillance conducted over a four-month span in 2023.  (D.I. 37-1 ¶¶ 5, 10).

Similarly, the Court finds no support for Defendant's argument that the three controlled buys attributed to Mr. McKinney did not happen, and that, consequently, law enforcement lied about their occurrence in the affidavit.  Defendant's claim hinges primarily on the notion that the lack of detail and law enforcement recording of the buys means they did not occur.[5]  (D.I. 37 at 6-7).  But none of the purported issues Defendant points out approach the realm of deliberate or reckless falsehoods.  *See United States v. Fountain,* No. 23-49 (CFC), 2024 WL 3858849 (D. Del. Aug. 19, 2024).  Rather, for each of the three controlled buys, the affidavit sets forth the manner in which the buy proceeded and includes, for example, relevant details regarding the nature of law enforcement surveillance over the CS, that the purchased substance was tested and weighed, yielded a positive reaction to the presence of cocaine, and that the CS advised law enforcement that the cocaine was purchased from Defendant.  (D.I. 37-1 ¶¶ 11-13).  The Court does not find

---

for a *Franks* hearing had been made.  Here, the CS's information and law enforcement observation support the inference that Defendant did indeed reside in the trailer at the Saunders Road property, and, far from concealing it, the affiant explicitly included the different vehicle registration address in the affidavit.  (D.I. 37-1 ¶¶ 5, 8, 10).  If a court confronted with an undeniable false fact did not find an intent to mislead, this Court will certainly not do the opposite where Defendant has presented no evidence that the affiant intended to mislead a judge and no evidence that Defendant did not actually reside at Saunders Road.

[5]     Defendant contends that the lack of facts in the affidavit undermine a reasonable belief that the events occurred because there are (1) no weights, pictures, or information on drug quantity or money used, (2) the transaction dates were vague, (3) no audio or visual recordings, and (4) no reports or pictures of officially authorized funds for two of the buys. (D.I. 37 at 6-7).

that a lack of audio or visual recordings or inclusion of specific transaction details constitutes deliberate or reckless falsehoods.[6]

For Defendant to have successfully "mandate[d] an evidentiary hearing, the [] attack must be more than conclusory and must be supported by more than a mere desire to cross-examine . . . [his] allegations must be accompanied by an offer of proof . . . they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses must be furnished or their absence satisfactorily explained." *Franks*, 438 U.S. at 171. With that, "[t]he deliberate falsity or reckless disregard whose impeachment is permitted [] is only that of the affiant, not of any nongovernmental informant." *Id.* Defendant's showing is limited to the arguments put forth in the briefing and does not reach the "offer of proof" that *Franks* calls for. And several of the allegedly false statements are attributed to the CS, not the affiant. *United States v. Rivera*, 524 F. App'x 821, 826 (3d Cir. 2013) (affirming denial of *Franks* hearing when proof offered reflected only on the veracity of confidential informants relied on in affidavit and not on veracity of the affiant). Thus, Defendant "fail[s] to make a substantial showing of an intentional or reckless material falsehood that would justify a *Franks* hearing," and the Court will not suppress the evidence seized pursuant to the Saunders Road search warrant. *Fountain*, 2024 WL 3858849 at *5.

---

[6]    The Government explains that law enforcement "routinely leaves out" information like details of quantity, prices, exact dates, and photos of the drugs from controlled buys because it is one way to protect a CS's identity. (D.I. 38 at 13). The Court agrees that the exclusion of those details "does not mean law enforcement invented the buys out of whole cloth." (*Id.*); *see, e.g, United States v. Covington*, No. 22-1114, 2023 WL 2401111, at *1 (3d Cir. Mar. 8, 2023) (considering an "affidavit [that] did not provide specific details about the informant or the controlled buy, omissions the government explains served to protect the informant's identity" and finding the affidavit overall to be sufficient to establish probable cause).

C.    **Lacking in Indicia of Probable Cause**

In addition to arguing that the search warrant application affidavit for the Saunders Road property was issued in reliance on a false affidavit, Defendant also asserts that there was an insufficient nexus between the alleged controlled buys, himself, and the Sentinel storage unit to justify a search of the unit. (D.I. 37 at 3, 8). There is a high threshold for establishing that a warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *See United States v. Pavulak*, 700 F.3d 651, 664 (3d Cir. 2012) (citing *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012)). The Court is not persuaded that the threshold is met here.

The affidavit in this case is not a "bare bones" affidavit, but rather is based on information obtained from a reliable, experienced CS, the affiant's observations, law enforcement surveillance over an extended period of time, subpoenaed event logs, and controlled buys. It does not rely on an officer's unsupported belief in the existence of probable cause. *See United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005); *see also Gates*, 462 U.S. at 239 (identifying the affidavits in *Nathanson v. United States*, 290 U.S. 41 (1933), and *Aguilar v. Texas*, 378 U.S. 108 (1964), as "bare bones" because each contained only an officer's belief that probable cause existed without providing any factual details). Nor does it rely on stale evidence, *see Zimmerman*, 277 F.3d at 437, or on an uncorroborated or otherwise unreliable anonymous tip. *See Williams*, 3 F.3d at 74.

Instead, the affidavit states that the CS informed law enforcement that Defendant maintained a rental storage unit in the Millsboro area to hide illegal drugs. (D.I. 37-1 ¶ 5). The affidavit also describes law enforcement surveillance of Defendant, including witnessing Defendant operating the same black Dodge pickup truck identified by the CS, traveling to Sentinel

Self Storage, utilizing a passcode, and entering the locker area.[7]  (*Id.* ¶ 14).  The affiant noted that Defendant traveled to the area of Unit D10, where the affiant was unable to view Defendant's activities.  (*Id.*).  The affiant observed Defendant departing the storage facility within minutes, and law enforcement observed Defendant traveling back to the Saunders Road residence.  (*Id.*).  Law enforcement confirmed that the storage unit belonged to Defendant by issuing a DEA Administrative Subpoena, then followed up on the investigation by conducting a K-9 search[8] and obtaining a log of Defendant's storage unit access through another subpoena.  (*Id.* ¶¶ 15-18).  The access log demonstrated that Defendant made multiple short visits per week.  (*Id.* ¶ 19).  The affiant stated that this activity is, in his training and experience, indicative of the sale and storage of illegal drugs.  (*Id.* ¶ 19-20).

Under the circumstances outlined in the affidavit, it was objectively reasonable for the officers conducting the search to believe that probable cause for the warrant existed and to rely in

---

[7]    Defendant also asserts that this storage unit visit did not occur, pointing to it as another example of falsehoods contained within the affidavit.  (D.I. 37 at 14).  It is Defendant, however, and not law enforcement that espouses a falsehood on this point.  The event log (D.I. 37-5) does not include an October 31 timestamp because the log was obtained prior to Defendant's visit that day.  However, the law enforcement report outlining that surveillance details when law enforcement saw Defendant enter and leave.  (D.I. 37-4 ¶¶ 8-9).  That information was confirmed with the office manager at the facility.  (*Id.*).  Video footage from the facility also shows a black Dodge pickup truck with the license plate registered to Defendant entering and exiting the facility at those times.  (D.I. 38, Ex. 4 at 0:22-0:54; *id.*, Ex. 5 at 0:00-0:09).

[8]    Defendant also asks the Court to give no weight to the K-9 unit's scan of the storage unit.  (D.I. 37 at 18).  Specifically, Defendant takes issue with the lack of video of the K-9 sniff and "alleged alert" described in the affidavit, arguing that there is "no logical reason why such an important event was not preserved.  That fact alone calls into question the veracity of the claim."  (*Id.* at 19).  But a lack of video documentation does not mean the event did not occur, and Defendant provides no evidence that it did not.  Information regarding the K-9 scan is provided in two paragraphs in the affidavit.  (D.I. 37-1 ¶¶ 16-17).  Even without considering the K-9 scan, law enforcement verified that the storage unit belonged to Defendant, observed him enter the facility, and obtained logs of his comings and goings.

good faith on both warrants issued. *See* Williams, 974 F.3d at 351-354; Fountain, 2024 WL 3858849 at *2, 5. Thus, Defendant's motion to suppress would fail under the good faith doctrine even assuming that the search warrant was infirm. *Werdene*, 883 F.3d 204 at 217; *Loy*, 191 F.3d at 367; *United States v. Golden*, No. 21-2618, 2023 WL 2446899 at *3 (3d Cir. Mar. 10, 2023). Therefore, the evidence seized pursuant to the Sentinel search warrant will also not be suppressed under the exclusionary rule.

IV.    **CONCLUSION**

        THEREFORE, for the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Suppress Evidence (D.I. 37) is DENIED.


                                                _____
                                                The Honorable Maryellen Noreika
                                                United States District Judge